Mr. Buckley, whenever you're ready. May it please the Court, Tim Buckley and Kelly Christopher here on behalf of appellant defendants in this case. Quoting from the District Court's order, on September 24, 2014, Sheriff's deputies with a search warrant forcibly entered the rural home of David and Teresa Hooks at 11 p.m. where they shot and killed David Hooks as he ran naked holding a shotgun by his side. That's an important first line for this Court's consideration because there is absolutely no evidence in the record to support that that's what happened. And from there, the Court below engaged in, frankly, fanciful manipulation of the facts which is inconsistent with how the Qualified Immunity Law should be applied. You yourself, Judge Jordan. Judge Jordan Can I ask you one before you get to that? Because I want you to get into the meat of your argument on the Qualified Immunity, but I have one procedural question for you. This is a Qualified Immunity appeal. How do you get to raise and how do we get to review your second argument about the causal connection between the warrant and Mr. Hooks' death? That's not Qualified Immunity material, right? That goes to the ultimate merit of whether or not they can make out their claim, but not to whether or not there was a constitutional violation alleged for either the entry, the Isn't that causal connection issue collateral to the Qualified Immunity appeal, regardless of how we solve that appeal? Your Honor, in part, I don't think so because the Court below said that that line of damages, specifically in the next sentence of the order of the Court, was determined by whether the warrant was lawfully secured. I know, but that has nothing to do with your Qualified Immunity appeal. The District Court could have said, there's no causal connection. All you have is damages for, if you can win, all you have are damages for the illegal entry into the home because there wasn't a valid warrant, and maybe for the detention of Ms. Hooks, but you don't get damages for Mr. Hooks' death. That would have had no impact on your Qualified Immunity appeal. You would have had the same Qualified Immunity appeal you have now, claiming that there was no violation and there was no clearly established law, but the causal ... I'm having trouble figuring out how the causal connection point is up here on interlocutory appeal. That's okay. I just wanted you to know it was a concern, at least for me. I understand the concern, and I do want to respond. What I would say is the court did take the step of ruling and addressing the proximate cause arguments in its order. Well, you raised it at summary judgment, right? Yes. But that doesn't mean ... Of course, the District Court ruled on summary judgment because it's an issue you raised, but that doesn't mean that every single issue that District Court rules on gets up here on interlocutory appeal through a Qualified Immunity assertion. I agree, Your Honor. I would say that this court has the discretion to evaluate claims that are within the nucleus of issues that are going to be addressed later on appeal. For purposes of efficiency, I think the court at least has the discretion to address those arguments. Okay. I've taken you way beyond the time I wanted to, so I want to give you the opportunity to get into the heart of your argument. All right. Thank you, Your Honor. What I was going to say is in reading those first lines and really reading the entire order and analysis of District Court runs afoul of you, Judge Jordan's, language in your case, Jackson v. City of Miami, where you said, the purpose of immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. Qualified immunity is an immunity from suit rather than mere defense. Like an absolute immunity, it is effectively lost if the case is erroneously permitted to go to trial. That's exactly what my clients are facing because under these circumstances, I would put it to you that despite the unfortunate result, which as argued in our briefs was brought about by Mr. Hooks himself, every step that was taken was at least above the standard of plain incompetence or failure to act on reasonable probable cause. Well, Judge Bowen wrote a pretty long order and one of the things that he tried to point out, at least from his perspective, was that there were a number of things in the warrant application affidavit that were either incorrect, viewing the summary judgment standard and the facts and the light most favorable to Ms. Hooks, and there were a number of things that were omitted that should not have been omitted. For example, the length of time that had passed since I think it was Mr. Francis had said something about delivering methamphetamines to Mr. Hooks. The fact that no one had been able to establish that Mr. Francis' statements were true. The fact that the son, I forget his name, was under the influence and so forth and so on. Do you disagree that the district court got the facts wrong in the light most favorable to Ms. Hooks or do you contend that those facts don't matter in the qualified immunity analysis because they're not material? I'm sorry, Your Honor. I didn't mean to. I think they are in that breed of factual information that was adequately disclosed. For example, the court below took issue with the term prior and attached a very draconian definition to that, that you can't just say prior information. You have to say when it is and how old it was. These officers didn't just on their own manipulate that information and in fact took the extra step of consulting with a DA before seeking the warrant and he even testified that it was clear that that was earlier information, it wasn't the primary basis and our argument is even if that were stale, that wasn't the central information that was within the application and affidavit. They didn't tell the magistrate when that Francis' information was obtained, right? That's right, Your Honor. They said prior and Frazier was the witness's name and the law doesn't require that they specify that. The case law says that failure to specify a specific date and time is not a material omission and we've cited that in our brief. Likewise, when he says... How about the fact that nothing had ever come of that allegation? Again, the case law doesn't say that you have to say what the ultimate result of that investigation was for it to be material. If it had turned, that can't always, it can't be a bright line rule, right? Because if this had been 10-year-old information and they had investigated and found out that the information was false, you would have had to disclose that, right? Absolutely, Your Honor. I don't know that it would have, excuse me, I don't know that it would have found its way into an affidavit. Understood, understood, but the point is that it depends on context, right? Whether you have to disclose time and whether you have to disclose results depends on circumstances. The totality of the circumstances, yes, Your Honor. And I would put it to you that in the event that that had been investigated and the result was that there was a decision that there was no evidence to support that, the allegation we'd be facing now is that the failure to include exculpatory information in the warrant would itself have been constitutionally flawed and the law does not require that exculpatory information such as their contention from the plaintiff's side was that because Mr. Garrett had been a drug user, that should have been disclosed within the affidavit. The case law does not support that either. Likewise, in looking at the word prior, the court should also look at how the district court used the term familiar. The court found that it was a material misrepresentation for Investigator Brewer to say that he was a resident. How many of us, in normal usage, if you say, do you know where so-and-so lives, you say, yeah, I'm familiar with that, it didn't say, I know the layout of the house, I know how it's structured, I know where this will be stored. So the semantic oppressive reading of what this officer did has to be looked at in the context of what this case is not. This is not a case where the aviator was reported stolen, Mr. Garrett was pulled over in the aviator, found to have meth in it, and he said, oh, that was already in here, and they went and arrested David Hooks. That's the kind of case that talks about not doing a thorough investigation, or if he had been pulled over in the aviator rather than surrendering voluntarily, and he had two other people in the car and the officers chose not to interview them, that's the kind of thing that Kingsland and this whole progeny of cases that they rely on is talking about. It's not about when here you have a situation where over hours, I see my time's up, may I? No, no, give him five more minutes, please. Where over hours, an experienced investigator doesn't just take hook and line and sinker what this witness is saying, he tries, and there's recorded evidence of it, he tries to trip him up with other officers present, he tries to see if he can get him to make mistakes in his story, and then what does the court do? It says, well, he did make mistakes in his story because he said he only stole two guns, not three. The situation looked at from the perspective of qualified immunity is you have a witness, even in the light most favorable, as opposed to the dim light that the court cast on these facts, in the light most favorable, this man was not suspected of the crime that he admitted to and other crimes that he was not suspected of. Who are you referring to now? Garrett. What were the other crimes? That was one that I couldn't quite discern from the record what the other crimes were besides the aviator. Stolen guns from the cartilage of the Hook's house. There was information about, he was suspected of having stolen a truck and he told them where that was. So there again, he's admitting a crime. And then there was like a generator and some tools. If you read the record, he basically threw himself on the mercy of the police and said he was afraid because he had accidentally cut into someone who had a large amount of drugs. The case law specifically says that in the situation with large amount of drugs or manufacture or distribution, haste is often part of what characterizes the process of seeking the warrant. I would put it to you that this record doesn't show haste. What it shows is a thorough vetting of this man's story. Under Kingsland and the other cases, when the judge said he didn't... How did he vet the story? By going over it with him and suggesting... That's not vetting. In the context of seeking a search warrant, it is. This is a knock and announce search warrant. They didn't seek to arrest this man. They didn't seek to do a breach without knock and announce. In relation to what they were trying to do, they were investigating the information that this witness was giving them. I know, but I think you have some good points. But, I mean, to say that you vet a story by engaging in thorough examination of the person who's giving you the story, that... We're talking about the use of words. That's not vetting. Vetting is when you do some outside investigation to check and make sure that the facts that are being given to you have some semblance of reality. Well... There was none of that done, right? No, there was that done because there was a reported crime from Hooks. These... What crime? The theft of his aviator and materials from his outer buildings. Yeah, but that doesn't... But that says nothing about the suspicion of having methamphetamine. No, I'm saying, well, I'll put it this way... It corroborates only the non-inculpatory portions of the statement that his car was stolen. Fair enough, but you're under the standard under these situations. And where it is found to have been an inadequate investigation more often involves situations where the police encounter three witnesses and they just ignore two of them. There wasn't information that was immediately presented to these officers except the information they had, and they had a good faith basis to seek a search warrant for that to further investigate whether there was drug activity. Did they have... And the... I'm sorry, Your Honor. Did they have any information that Hooks had redistributed drugs? There was something in the affidavit for that, but there wasn't any proof on that, right? There was information from Frazier earlier that Hooks had been involved in the distribution ring of drugs. As far as the term redistribution, I can't specifically say that that term was embraced, but I would again say... That's a big problem though, right? Distribution versus redistribution? What was incorrect in what the officer said as to that portion of the affidavit? It wasn't totally correct, right? It was not absolutely correct in the sense of the information he had was more that Hooks had distributed drugs as opposed to redistributed them as part of a larger ring. And so that term could have been misperceived. Again, I don't think that is material to the analysis that's to be applied in terms of reasonable probable cause. And I want to further the point, Your Honor, that with respect to the cases calling for further investigation, and I'll finish my point. Thank you for my additional time. Those cases deal with police ignoring immediately available information in either arrest setting or an urgent setting. And here, the very investigation that the court said was required is exactly what case law says is often not available because with drug distribution, there's a sense of urgency and a risk of destruction of property that makes it something that has to be acted on quickly. All right, Mr. Buckley. Thank you very much. You've saved your time for rebuttal. Thank you, Your Honors. My name is Brian Spears. We'll give you more time, too, if we take you beyond yours as well. Thank you very much, Judge. I'm here this morning with my co-counsel, Mitch Shook, and with my client, Teresa Hooks, who's here with her family. When denying the defendant's motion for summary judgment, Judge Bowen wrote, if there ever was a case before me involving an assertion of qualified immunity that demanded a trial by jury, this is it. Judge Bowen's conclusion was correct, and his order denying summary judgment should be affirmed. I want to start by responding to the claim by defense counsel that the investigating Garrett took place. Did he ignore any information that shed light on the source of the meth that was in Garrett's possession when Garrett was arrested in the possession of David Hooks' car? Yes. That information was that he had been living with and camping out with Chris Willis, who During that same interview, Garrett explained that Chris Willis was his supplier for meth, that Chris Willis had an abundant supply of meth still at Chris Willis' home. He described it as, that is to say, Garrett described Chris Willis' home as one where there were baggies of meth on the floor that you would see if you went there. This is in the same interview in which Garrett claims, without any support, that the meth that was found in his possession came from David Hooks' home. On September 24th, 2014, David, I'm sorry, Your Honor. Didn't he say that it came from the car? Oh, yes, yes. Rather than the home? He did. Thank you, Your Honor. The statement from Garrett was that when he started breaking into vehicles there at the Hooks' home, that he went into a, I think it was a white truck that was adjacent to the home, and when he broke into that, that he found a plastic bag of some kind, a neoprene bag, and he took that, and he also, for some reason that he never explained, he took scales that he claimed to have found. The scales and the bag he put into, that is to say, Garrett put into his personal lock box. So when the officers found Garrett when he was arrested on the afternoon of September 24th, 2014, Garrett had his personal lock box for which he solely had the key, and in that Which is consistent with what? Consistent with, among other things, distributing meth himself, or distributing with his supplier, Chris Willis, the meth. Did he say he got that from Hooks? I'm sorry, Your Honor? Did he say he got it from Hooks? He said that he took the scales and the meth that he had placed in his, Garrett's, personal lock box. He said that he received those from the vehicle that was at the Hooks' property, yes, sir. Got it out of the vehicle. That's what he claimed, yes, yes. And at the same time, of course, and in that same interview, the officers were told that he was, he being Garrett, was already strung out on meth. That was the phrase that was used, meaning he's already been using meth, that he has a regular supplier, Chris Willis, and that Willis still has meth in his possession. He even said, incredibly, that he, meaning Garrett, had considered going to Willis to redistribute the meth that he found. So if you're an officer there talking with Garrett, and you know nothing more about Garrett than what he's telling you, he tells you he has a supplier of meth that he's already been using, and at the same time, he claims, oh, you know, the meth that was found that I had, that I could have been distributing, that's really not mine. I got it from the guy that I just robbed. Well, the meth that I have just told you about, police officers, when I was not under suspicion for any particular crime. Well, it... Doesn't that change the analysis? That's not the facts that we have here. That is to say that in the days before Garrett's arrest, Garrett being arrested on September 24th, Garrett was already known to Officer Brooks, who was in the interview, already known to be strung out on meth, using meth regularly, stealing other property. There was a warrant that had been issued for him as of September the 21st for the theft of a separate truck. They were looking for him on that day. But not for the theft of this truck, right? Not for the theft of this truck until on the afternoon of September 22nd, excuse me, on the afternoon of the 23rd, my client, excuse me, David Hooks, the deceased, contacted the sheriff's office, invited them to come to his property. They came. They inspected, they inspected the shed out of which Garrett had stolen things. They inspected the very vehicle out of which Garrett later claimed that he took the meth. They took fingerprints. Hooks was a cooperative victim of a crime and had the officers come on that afternoon. And there was no suggestion, there was no effort on Hooks' part to refuse them access to any part of his property. There was nothing other than cooperating with the officers when he came. So here again you have brewer learning that a known meth user who has a regular supplier for meth claims that, oh, you know, the meth that you found in my possession in my lockbox isn't really mine. It reminded me, if you bear the analogy, it reminded me of an article that appeared last month in the Orlando Sentinel. The article was to the effect that there was a man who was stopped for a traffic violation by police officers who had powder around his nose. And when he was asked, say, what's the powder around your nose? He said, oh, that cocaine that you see on me, it's not mine. That's exactly what Garrett tried to do with these officers was to say, you know, the meth that you just found on me where I have scales that I could be using to distribute the meth, it's really not mine. I got it from the guy who you have no prior drug history with. I got it from the guy that I just robbed from his house, which is more likely for the source of the meth. The source of the meth is at the heart of whether or not there's a fair probability, which is the terminology used for search warrants, a fair probability that you would find meth at David Hooks' home if you obtain and take out and execute the search warrant. Teresa Hooks has sued Brewer and Harrell for violating the Fourth Amendment guarantee that no warrant shall issue but upon probable cause supported by oath or affirmation. And I stress that because the warrant clause is not merely a probable cause guarantee. It is a guarantee that a warrant will not issue unless a neutral and disinterested magistrate independently decides probable cause exists. And as the Supreme Court declared in Franks v. Delaware, with some exceptions, the Fourth Amendment requires, quote, police to obtain a warrant from a neutral and disinterested magistrate before embarking on a search. For that reason, intentional or reckless material misrepresentations or omissions in a warrant affidavit violate the Fourth Amendment if such conduct results in a warrant without probable cause. And as this Court reiterated in the recent decision of Paiz v. Mulvaney, which is a 2019-11 circuit case, officers may not lie about or conceal critical information to a magistrate. And when we're confronted with that allegation, which is obviously what we're making, we then have to look at what the hypothetical affidavit would look like if there had not been the material misrepresentations by Brewer and had not been the material omissions that Brewer undertook when he submitted the affidavit. Is it really fair to say that it was a material misrepresentation by the officer to say that he was familiar with the House? Opposing counsel has made the argument that the judge put a pretty strong reading on the word familiar. He certainly had a strong reading of it, but we look at the fact, let's put the warrant into context. There are four paragraphs only submitted to the magistrate that are particular to this warrant being issued. And one is in the context of claiming that there have been reports that Hooks distributed meth, that the officer became familiar with the property by virtue of the investigation. What this officer did was he drove by on 319, Highway 319, which is the main road that runs between Dublin and Wrightsville. He drove by and didn't see any activity. He's familiar with the address. That's it. Clearly, there was no part of the investigation that involved what Fraser claimed that in any way corroborated that David Hooks was involved in any criminal activity whatsoever. So to say, and again, yes, it's accurate to say he's familiar with the address. He looked it up. The address was that of David Hooks. But that doesn't connote that there's any criminality on the part of David Hooks associated with what the officer is saying. But that's a different argument. The argument that familiarity doesn't connote criminality is different than he was not familiar with this address. The implication, and again, in the context of putting it into a warrant seeking the right to search this family's home for drugs, the implication is that there was some connection that they learned between Hooks' residence and drug operations that the officer then concluded that Garrett's claim might be true. But that was never the case. There was never any connection made. And if I'm— What was the most egregious error in this affidavit? I think that the most egregious had to do with the claim that Garrett had supplied them with information about offenses—had admitted to offenses over and above those that they already knew about. They had the Mendez truck, which is the theft that resulted in the warrant that was already outstanding as of September 21st. And of course, once Garrett's family turned him in by calling up Officer Brooks and having Brooks come to the residence, he's in possession. That is to say, Garrett's in possession of the car and whatever's in the car. So he's got to fess up to that. But they said that he had admitted to other crimes. When you listen to or read the transcript of the interview that Brewer did of Garrett, it is absolutely clear that there was no offense, none whatsoever, that Garrett was asked about that he admitted during the course of that. Well, the district court said in its order that there was actually, yeah, that when asked in discovery, the officers couldn't point to any other offenses. Right. Didn't the district court say that in its order? And they weren't familiar with any other offenses. Any other offenses, right. In other words, he didn't admit to any additional crimes, also in the affidavit. But why is that the most important, if he already admitted to several crimes for which he was not under investigation? If he admitted to one or two crimes, why does it matter that it wasn't really three or four from a probable cause perspective? Well, from a probable cause, with respect to the search, the assertion of Garrett admitting to other crimes is associated with whether or not you can believe what he's saying about Hooks. It goes to credibility. The officers vouched for Garrett's credibility by claiming that Garrett had admitted to crimes about which they were unaware, which was not true. He didn't in that interview. And secondly, that he had provided them with information that led to the discovery of other property that they wouldn't have otherwise found. But that wasn't true. Counsel for the defendants referred to Garrett helping them find, I think, helping to find the truck that was the subject of the arrest warrant that had already been issued on September 21st. He didn't help them find that truck. They already knew where it was. When Brooks investigated on September 21st the warrant that was outstanding for Garrett, Brooks was told where the truck was. They already knew where that truck was. Garrett didn't lead them to it. And in fact, when Garrett was asked during the interview, just look at the interview, when he was asked during the interview, what else can you tell us about that you haven't already given us? Referring to the property. His words were, his words were, that was everything. That is to say, Garrett is now admitting or claiming that a search of his shed that occurred prior to his arrest that one of these officers had already carried out that resulted in the seizure of a lot of stolen items from his shed. During the interview, Garrett doesn't admit to other property that then they get to go and find. He says, what you took on the 21st, quote, that was everything. That's at page six of the transcript at times 16, 13. Can you please give him five more minutes? I'm just giving you more time. Thank you. So again, when we look at the paragraphs of the affidavit, which is what we've got to focus in on, we can't focus in on what else they might have included and all of that kind of stuff. We've got to look at the affidavit because what's at stake is the integrity of magistrate decisions. And thus, here we've got these allegations in these four paragraphs. He claims that one of Mr. Buckley's arguments is that even if everything is taken as true, there was arguable probable cause and therefore qualified immunity attaches. Can you respond to that argument? Yes, sir. There's no arguable probable. When we ask, was the officer's belief reasonable? That's the question that we ask with respect to arguable probable cause. We look to whether or not the officer had conducted a reasonable investigation. And here the answer is no. It took only three hours between Brewer finding out that he has Garrett with meth and the issuance of this search warrant. Search warrants issued around 10 o'clock. And Brewer finds out about the meth while he's out at Garrett's property just a little bit earlier. And he starts calling together the sheriff's response team or SWAT type team thereafter. And they get the warrant issued at 956 from Judge Snell. There was nothing done by Brewer other than talking to Garrett. That constituted an investigation into Garrett's claim of finding the meth that he had been arrested with at Hook's home. None whatsoever. He had available to him the information about Willis. That Willis was already supplying meth to this man who now claims that the meth in my possession is Hook's. He didn't do anything to try to follow up with Willis. He had the most likely information about the source of the meth, Chris Willis. And he disregarded it altogether. That might be true if the officers hadn't been already aware of Mr. Hook's name from the prior discussions with Frazier. Correct? If it's someone that they've never heard of before, then maybe the obvious answer is I'll meth dealer. But when they already are aware of this person and indeed have driven by his house, why isn't it enough that someone has turned themselves in for a crime and given this information about someone that they already had suspected of drug activities in the past? Because there was absolutely no corroboration during the course of their investigation concerning Frazier that David Hooks had had any connection with Frazier whatsoever. As a matter of fact, they already knew that. And if I may just ask to Brewer, Officer Brewer had been intimately involved with the Frazier investigation in 2009. The Frazier investigation resulted in the arrest of Frazier in October of 2009 after eight controlled buys that Chris Brewer was involved in. After surveillance of Frazier's home. After recordings of the controlled buys that Brewer was familiar with. And not once in any of all of that investigative activity was any link ever noticed, found, or made between Frazier and Hooks. That's why there was no search warrant at that point, presumably, right? But once you have this additional activity, why isn't that at least enough for a warrant? Because there was nothing suspicious that they learned from Frazier relative to Hooks. Just nothing whatsoever. He's the victim of a crime and the fellow who's caught with the proceeds of that crime says, oh, the drugs that are on in my possession that are going to result with a mandatory sentence of a lot more years, those weren't mine. It was like and is like saying that the cocaine that you see on my nose isn't mine. It was unbelievable. Do you disagree with the statement in the affidavit that says during this investigation, Frazier had been interviewed by law enforcement and stated that he had been the source of multiple ounces of methamphetamine to Hooks, which Hooks was redistributing. Do I disagree with that? Right. That's not, as I understand, one of the statements that you're challenging in the affidavit. On the face of it, Frazier claimed that he had distributed drugs to Hooks along with to lawyers and other influential people in the county. It was an unbelievable contention. It was one that the officers who we deposed testified that not only did they not find any corroboration to that claim by Frazier, they didn't even open up a file on Hooks. They didn't open up a file on any of Frazier's claims because it was literally pulled out of the sky. There was nothing to it. And so... That also goes to your contention and Judge Bowen's conclusion that that's why it was although the statement that Judge Grant just read in and of itself may have been correct, that it had to be followed by other information. In other words, we have not been able to corroborate this. No one's been able to prove it. We didn't open a case, so forth and so on. Yes, Your Honor.  Thank you, Your Honor. Mr. Buckley, you've got your full time for rebuttal. Thank you, Your Honor. Just briefly to respond to the cocaine story. I haven't read that article, but this is a situation where if we liken Mr. Garrett to the cocaine, he calls, the police walks out to them and says, here's this cocaine. I'm scared to death. There's a very different set of circumstances here. And this notion that, listen to the interview you're told about these other crimes. Part of the interview was out at the scene where this guy surrenders to police and admits to the theft of an aviator that they have no suspect. He didn't surrender to police. He's taken into custody. No, the facts are that his parents called Brooks, who was a lifelong friend. He came out and they said... Well, he... They lied to the police to get him to go to the house. And then the officer who knows the family engages in a conversation with him. But he didn't surrender himself and say, take me in. It's when he confessed to what he had done that he was taken into custody, right? Well... Walk into the police station and say, oh, I did this. Please hold me. I will acknowledge he did not walk into the police station. Instead, his lifelong friend came and met him at the property. And he confessed to crimes he was not suspected of and that there were no suspects in. So I don't think it's anything like the person with cocaine on their face. With respect to the statement with regard to Frazier, I think it's interesting that the very same officers who knew what reasonable probable cause was and so didn't seek search warrants based on what Frazier told them when they followed up on it. Later, when they hear something about the same person that actually links him to actual methamphetamine and to a theft that has been reported, and this goes back to the familiar. Mr. Officer Brewer was familiar with the property, not only because of these drive-bys, but in part because Garrett didn't really know where he was. He had to describe it. He didn't go target David Hook's house. He didn't even know it. And so the familiarity is drawing together that this is the location he's talking about. This may not at the end of the day be relevant or dispositive, but it's something that I've been wondering about. So I want to ask you to answer the question if you if you can and humor me. When do people report a car stolen when they have illegal narcotics in the car? You know, I don't know the answer to that, Your Honor, but he reported a car stolen that a car stolen that was his that was not his. It was not actually his car. And he reported it as his car being stolen. So I can't look into the mind of David Hooks, who was tested positive for methamphetamine after his autopsy was done. I can't look into the mind of why he did that. But those were the facts that were presented to these officers. And the duration of the interview, I think, is also of import because they've raised the concern about this guy being someone who used meth. And so the notion of someone being a previous drug user doesn't go to probable cause, but it may go to his ability to recall events. And so they interviewed him at length to make sure that he wasn't in flights of fancy about what happened. And it corresponded with property that they knew had been stolen, but they had no suspect for. And so I think the law is that once reasonable probable cause is established, generally, a police officer doesn't have to do any further investigation to go get a warrant. The Kingsland case. What did Officer Brewer say about the whole Willis admission? By Mr. Garrett. I don't know that he was cross-examined at length on that. I think. Forget cross-examined. What did he say about it? What did he do about it when he when Garrett also discloses that Willis is also a source of his methamphetamine? What does how does Brewer take that into account in the overall calculus of things? How he took it into account is that it was known that this guy was a meth user and he associated with other people who were involved in meth. And here he is. Instead of just dumping it back on his guy, he comes forward with a significant and larger amount of meth that he had ever seen in his life, says Mr. Garrett. And he admits that it's someone else. And so I don't think the duty of an officer includes vetting every other possible suspect. So the answer is that he didn't check whether that is legally relevant or not. He did not check. I don't think he checked any further because this witness had identified David Hook's home as where he got this methamphetamine. And so he took the reasonable next step of securing a search warrant. You can you can wrap up if you'd like. Yeah, I haven't had time to address the other arguments. But the one point I do want to make is in terms of the detention of Teresa Hooks. We're not going to get into that. No, but let me tell you the reason why, because I don't want to cut you off. It's part of your appeal. But in order for you to be able to raise it, he needs to be able to respond to it. And so if you if you raise it and talk about it for the first time in your rebuttal argument, Mr. Spears has no chance to discuss it. But that doesn't mean the issue is waived. You presented it in the briefs and he didn't discuss it either. We'll figure we'll try to figure it out. Okay, then to wrap up, I would say I would ask the court to look carefully at the case law that both the court and opposing counsel relied on. And it doesn't deal with search warrant situations. It's mostly with regard to decisions to make arrest disregarding immediately available evidence. All right. Thank you both very much. All right. We're in recess until tomorrow.